IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| EDDRICK SHORTER, | ) | |
| LATOYA MCMILLAN, | ) | |
| A.M., a minor who sues by and through | ) | |
| her mother and next friend Latoya | ) | |
| McMillan, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:11cv531-WHA |
| | ) | (WO) |
| KIRBY DOLLAR, in his individual | ) | |
| and official capacities, | ) | |
| MIKE LOYLESS, in his individual | ) | |
| and official capacities, | ) | |
| RACHEL HOUSER, in her individual | ) | |
| and official capacities, | ) | |
| CITY OF PHENIX CITY, | ) | |
| RAY SMITH, in his individual | ) | |
| and official capacities, | ) | |
| DANIEL DAVIS, in his individual | ) | |
| and official capacities, | ) | |
| JARRED BARR, in his individual | ) | |
| and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

This case is before the court on a Motion to Dismiss (Doc. # 28) filed by Defendants

Kirby Dollar ("Dollar") and Mike Loyless ("Loyless") on August 19, 2011.

The Plaintiffs, Eddrick Shorter ("Shorter"), Latoya McMillan ("McMillan"), and A.M.

(collectively "the Plaintiffs"),  filed a Complaint in this court on May 5, 2011, alleging a

multitude of claims against a multitude of defendants including Dollar and Loyless.  The five

counts that apply to Dollar and Loyless, both in their official and individual capacities, are as follows: Count I – excessive force in violation of the Fourth Amendment of the U.S. Constitution and brought pursuant to 42 U.S.C. § 1983; Count II – unlawful search and seizure in violation of the Fourth Amendment of the U.S. Constitution and brought pursuant to 42 U.S.C. § 1983; Count III – illegal entry  in violation of the Fourth Amendment of the U.S. Constitution and brought pursuant to 42 U.S.C. § 1983; Count V – failure-to-intervene  in violation of the Fourth Amendment of the U.S. Constitution and brought pursuant to 42 U.S.C. § 1983; and Count VII – false arrest and false imprisonment  in violation of the Fourth Amendment of the U.S. Constitution and brought pursuant to 42 U.S.C. § 1983.  Defendants Dollar and Loyless moved to dismiss the claims against them by invoking both absolute immunity, as to their official capacity claims, and qualified immunity, as to their individual capacity claims.  On September 12, 2011 the Plaintiffs filed a Response to Dollar and Loyless's Joint Motion to Dismiss, and on September 19, 2011 Dollar and Loyless filed a Reply to the Response.

For reasons to be discussed, the Motion to Dismiss is due to be GRANTED in part, and DENIED in part.

## II.  MOTION TO DISMISS STANDARD

The court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).  In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief.  *See*

*Ashcroft v. Iqbal,* _ U.S. _,  129 S. Ct. 1937, 1949-50 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  The factual allegations "must be enough to raise a right to relief above the speculative level."  *Id.* at 555.

### III. <u>FACTS</u>

The facts relevant to Dollar and Loyless as alleged in the Complaint are as follows:

On or around October 30, 2009, the Plaintiffs were in their residence located at 1109 20th Street in Phenix City, Alabama.  At around 1:45 p.m., the Plaintiffs were startled by someone who was knocking so violently on the door that "burst[s] of light" escaped between the door and its frame with each knock. (Doc. #1 ¶ 17).  The door was connected to the living room, so only Shorter and A.M. heard the knocking since McMillan was in the bathroom taking a shower.  Furthermore, the individual officer knocking proceeded in using vulgar language in commanding that the Plaintiffs open the door.  Shorter opened the door long enough to tell the officer to stop beating on the door since A.M., age 3, was present and growing fearful.  The shouting and banging continued until officers exploded into the apartment by breaking down the door and spreading out throughout the home.

Loyless and Dollar were two of the officers who entered the Plaintiffs' residence during that explosive entry.  Each of the officers had their guns drawn and pointed at Shorter.  Defendant Jarred Barr ("Barr"), a police officer with whom Loyless and Dollar were working,

placed his gun within inches of Shorter's face and restrained Shorter's hands.  After Shorter complied with Barr's requests, Dollar struck Shorter in the back of his head with his gun causing Shorter to collapse to the ground and lose consciousness.  While Shorter was on the ground and restrained in handcuffs, Dollar, Loyless, Barr, and Defendant Rachel Houser ("Houser") all began beating Shorter with their batons on the back of his legs.  These beatings left bruises, lacerations, and contusions on Shorter.  Soon after the beating, the officers took McMillan and Shorter to separate officers' cruisers.

While in the cruiser, an officer referred to as "Sparky" threatened to taze Shorter but was restrained by an unidentified officer.  Instead, "Sparky" started the car and lowered a rear window.  Then he sprayed Shorter in the face with pepper spray and closed the window and car door.  Shorter's mother was witness to the after effects of the pepper spray on Shorter, which included "breathing heavily, gasping for air, and salivating all in an attempt to breathe. (Doc. #1 ¶ 32).

Shorter and McMillan were incarcerated because of the allegedly illegal arrests made by Dollar, Loyless, Barr, and Hausen.  Furthermore, Shorter did not receive appropriate medical treatment while in the Phenix City jail for his injuries suffered at the hands of Dollar, Loyless, Barr, and Hausen.  Also, A.M. suffered severe anxiety as a result of the incidents surrounding the arrest.

In addition, the Plaintiffs' Complaint also asserts that the Defendants did not have a search warrant for the Plaintiff's residence, but, instead, had an arrest warrant naming Navansley "Tat" Smith, at the address 47 Springvalley Road in Russell County, for 1st Degree Rape.  To support their claim, the Plaintiffs cited language from Dollar's affidavit in support of the default

4

judgment from a state forfeiture matter related to the Plaintiffs' state criminal trials. (Doc. #1 ¶ 43). Plaintiff also further notes that Dollar's affidavit contained the wrong date (October 10 instead of the proper October 30). (Doc. #1 ¶ 45).

The Plaintiffs allege that the Defendants swarmed the outside of the house before Officer Barr began banging on the front door. The Plaintiffs allege that the Defendants, without lawful reason to do so, separated an exterior sanitary sewage drain pipe[1] from the Plaintiffs' residence and discovered a small amount of marijuana. After arresting the Plaintiffs, the Defendants searched the entire home, without a search warrant, and collected items of personal property including $600 cash and a handgun. Even though the Defendants arrived at the Plaintiffs' residence at 1:45 p.m., the search warrant was not issued until about 3:45 pm which was after the entry to the residence, the arrests of Shorter and McMillan, the search of the residence, and the seizure of property.

Furthermore, the search warrant contains information in conflict with Dollar's aforementioned affidavit. For example, Dollar's Return and Inventory form attached to the search warrant, explains that the persons and places to be searched took place at 4:00 p.m. on October 30, 2009 at 1109 20th Street, Phenix City, AL. (Doc. #1 ¶ 54). This is inconsistent with his affidavit which provides that the arrest warrant was executed on October 10, 2009 at 47 Springvalley Road in Russell County. (Doc. #1 ¶ 43).

The Plaintiffs maintain that at no point in time were they suspects for any criminal investigation, (Doc. #1 ¶ 71), and that at all times were Dollar and Loyless acting "within the

---

[1] In the complaint this is simply referred to as a "sanitary sewer drain," but the Plaintiffs' response brief explains that the pipe ran to a private septic tank on their property. (Doc. #1 ¶ 48). The drain will henceforth be referred to as "the pipe."

line and scope of their authority as officers of the Sheriff of Russell County." (Doc. #1 ¶ 58).

## IV. <u>DISCUSSION</u>

### A. <u>Official Capacity</u>

The claims against Dollar and Loyless in their official capacity as Russell County Sheriff's Deputies are due to be dismissed.  The case law in Alabama makes it clear that sheriffs are state officers.  *See*, *e.g.*, *Parker v. Amerson*, 519 So. 2d 442, 442 (Ala.1987).  "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." *McMillian v. Monroe County*, 520 U.S. 781, 793 (1997).  Furthermore, deputy sheriffs are the alter egos of sheriffs and are also given state sovereign immunity under the Eleventh Amendment when acting in their official capacity.  *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989).

In addition to the case law protecting Alabama sheriffs and deputy sheriffs in their official capacity, the Plaintiffs concede in their response that the official capacity claims against Dollar and Loyless are due to be dismissed.  Accordingly, the court dismisses the Plaintiffs' claims as they apply to the Defendants' official capacity.

### B. <u>Individual Capacity and Qualified Immunity</u>

Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991).  As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred.  *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988).  Once it is established that a defendant was acting

within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established." *Wood v. Kesler* 323 F.3d 872, 878 (11th Cir. 2003).

 Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997).  In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In *Vinyard v. Wilson*, 311 F.3d 1340, 1350–53 (11th Cir. 2002), the Eleventh Circuit articulated three ways in which individual state defendants can receive "fair notice" that their conduct violates clearly established law.  First, the words of a federal statute or constitutional provision may be specific enough "to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, <u>even in the total absence of case law</u>." *Id*. at 1350 (emphasis in original).  The Eleventh Circuit considers a case falling into this category an "obvious clarity case." *Id.* at 1350.

Second, if the conduct at issue is not so egregious as to violate the Constitution or a federal statue on its face, the court must turn its attention to case law that espouses "broad statements of principle . . . that are not tied to particularized facts." *Id.*  at 1351.  In these types of cases, courts will declare "X Conduct" unconstitutional regardless of the specific factual

situation.  *Id.*  "[P]ut differently, the precise facts surrounding 'X Conduct' are immaterial to the violation," thus these decisions can "clearly establish law applicable in the future to different sets of detailed facts."  *Id.*

Third, courts must look to cases that tie a particular type of conduct to the specific facts of the case.  *Id.*  With these cases, courts must examine case law stating that "Y Conduct" is unconstitutional in "Z circumstances."[2]  *Id.*  If the circumstances facing the official are "materially similar" to those of the fact-specific case, this precedent can clearly establish the applicable law and qualified immunity will not be warranted.  *Id.* at 1352.

In this circuit, the law can be "clearly established" for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or when relevant the highest court of the state where the case arose.  *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003).

Furthermore, the issue of whether Defendants Dollar and Loyless were acting within their discretionary authority is uncontested and will be presumed for the rest of the analysis.

1. <u>Count III – Illegal Entry</u>

a. <u>Constitutional Violation</u>

Regarding Count III of the Plaintiffs' Complaint, the Court finds that the Plaintiffs have met their burden at this stage of litigation and the claim is due to go forward.

---

[2] The Eleventh Circuit noted that most case law will fall into this third category. *Vinyard*, 311 F.3d 1351–52.

The first step in reaching this conclusion is to determine whether the conduct of Dollar and Loyless, as alleged by the Plaintiffs, violates a constitutional right of the Plaintiffs.  It is well-settled law in this circuit that "the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant." *Steagald v. U.S.*, 451 U.S. 204, 211-12 (1981) (citing *Payton v. New York*, 445 U.S. 573(1980)).  Furthermore, "[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Steagald*, 451 U.S. at 212. (quoting *Payton v. New York*,  445 U.S. at 590).  Additionally, "law enforcement officers may not enter the home of a third party to search for the subject of an arrest warrant without first securing a search warrant for that home." *Bates v. Harvey*, 518 F.3d 1233, 1245 (11th Cir. 2008). If an arrest warrant alone were sufficient to search a third party's residence then "[a]rmed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances." *Bates*, 518 F.3d at 1245 (quoting *Steagald*, 451 U.S. at 215).

"Warrantless entry into the home is therefore unreasonable, subject only to a few 'jealously and carefully drawn' exceptions." *McClish v. Nugent*, 483 F.3d 1231, 1240 (11th Cir. 2007) (quoting *Georgia v. Randolph*, 547 U.S. 103, 109 (2006)).  "Consent provides one exception to the warrant requirement." *McClish*, 483 F.3d at 1240 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *United States v. Edmondson*, 791 F.2d 1512, 1515 (11th Cir.1986)). "A second exception to the warrant requirement is made for 'exigent circumstances,' or situations in which 'the inevitable delay incident to obtaining a warrant must give way to an

urgent need for immediate action.'" *Id.* (quoting *United States v. Burgos*, 720 F.2d 1520, 1526 (11th Cir.1983)). "Courts have upheld exigent circumstances entries to break up a violent fight, to prevent the destruction of evidence, to put out a fire in a burning building, to pursue a fleeing suspect, to rescue a kidnapped infant, and to attend to a stabbing victim." *Id.* at 1240-41 (internal citations omitted).

Turning to the facts as alleged by the Plaintiffs, on October 30, 2009, the Defendants approached the Plaintiffs' residence, 1109 20th Street in Phenix City, holding nothing but an arrest warrant for some individual who did not reside with the Plaintiffs. The address listed on the arrest warrant was for a residence listed at 47 Springvalley Road, in Russell County. The Defendants did not have a warrant to search the Plaintiffs' residence, nor did the Defendants have any paperwork supporting any legitimate reason for their presence at the Plaintiffs' residence. After violently banging on the door and being told by Plaintiff Shorter to leave the property, the Defendants proceed to separate the pipe from the Plaintiffs' residence. The Plaintiffs allege that McMillan was in the shower, so the Defendants, having circled the residence, would have been able to hear the sound of the Plaintiffs' shower running before removing the pipe from the residence.

After examining the contents of the pipe, which the Defendants believed to be marijuana, the Defendants exploded through the Plaintiffs' front door and used force to effectuate an arrest of the Plaintiffs in the presence of the Plaintiffs' minor child. Furthermore, the Defendants also conducted a search of the Plaintiffs' home immediately after completing the arrest. To reiterate, all of this was done without a search warrant for the Plaintiffs' residence and while the

Defendants were holding nothing but an arrest warrant for a third party accused of rape who resided at a different address.

Applying these alleged facts to well-established precedent outlined above, it is clear that the Defendants have violated the Plaintiffs' right to be free from unlawful entry. *See Steagald* 451 U.S. at 211-12 (prohibiting warrantless searches of private residences); *Bates*, 518 F.3d at 1245 (explaining the procedure for executing an arrest warrant at a third party's residence); *McClish*, 483 F.3d at 1240-41 (defining the contours of the exigency exception). The Defendants' search of the Plaintiffs' home in the absence of a search warrant is presumptively unconstitutional. Under the alleged facts, the Defendants had no reason to look into the Plaintiffs' pipe or to rush into the Plaintiffs' residence without a warrant.

The Defendants seek to excuse their behavior by arguing that looking into the pipes did not constitute a search under the Fourth Amendment or, in the alternative, that if it did constitute a search, then it was excused by the "exigent circumstances" exception to the warrant requirement. Both of these are easily dispensed with given the alleged facts.

"It is well-established ... that only individuals who have a legitimate expectation of privacy in the area invaded may invoke the protections of the Fourth Amendment." *United States v. Lee*, 586 F.3d 859, 864 (11th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 2392 (2010) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). "The party alleging an unconstitutional search must establish both a subjective and an objective expectation of privacy." *United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006) (citing *United States v. Robinson*, 62 F.3d 1325, 1328 (11th Cir.1995)). "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy

expectation be one that society is prepared to recognize as reasonable." *Segura-Baltazar*, 448 F.3d at 1286 (quoting *Robinson*, 62 F.3d at 1328).

The Supreme Court has explained that individuals do not have an objective expectation of privacy in trash that is "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it." *California v. Greenwood*, 486 U.S. 35, 40-41 (1988) (quoting *United States v. Reicherter*, 647 F.2d 397, 399 (3d. Cir. 1981)). The key factor in the Court's discussion in *Greenwood* is the idea that officers are allowed to search any area that a member of the public would be able to search. More specifically, the Court explained that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." 486 U.S. at 41 (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). Lower court decisions from around the country have echoed this sentiment by explaining that waste water flowing irretrievably into public sewer systems should receive the same amount of Fourth Amendment protection that trash on a curb receives. *See, e.g, Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 63-65 (1st Cir. 2004); *United States v. Hajduk*, 396 F. Supp. 2d 1216, 1224-26 (D.Colo. 2005); *People v. Elec. Plating Co.*, 683 N.E.2d 465, 466-70 (1997). The *Hajduk* court further clarified this issue, by noting the difference between a search of a sewer pipe and the search of a "wastewater treatment tank" which has yet to send its contents to the public sewer system. *Hajduk*, 396 F. Supp. 2d at 1226-27. While no Eleventh Circuit court has addressed this particular set of facts, the result reached by those courts that have analyzed these facts are merely a simple application of the *Greenwood* Supreme Court precedent. Accordingly, it is clear that individuals have no expectation of privacy in material that is moving irretrievably into the public.

Turning first to the subjective expectation of privacy inquiry, it is clear that the Plaintiffs maintained a subjective expectation of privacy in their waste water because they used opaque pipes to carry that waste water to their private septic tank.  It is important to note that no such fact is alleged in the Complaint and, in fact, the Defendants have merely assumed that the sanitary sewer line from the Plaintiffs' home led to a public sewer.  However, in their response brief, the Plaintiffs explained that they maintain a private septic tank for their residence.

Turning to the objective component of expectation of privacy, the court finds the *Greenwood* case and its waste water progeny persuasive.  Similar to the court in *Hajduk*, the court is facing a situation in which individuals are temporarily storing their waste water before it is sent to some other, possibly public location[3].  Because the Plaintiffs' waste water was going to be stored on their property before possibly entering the public sewer system, the Plaintiffs had an objective expectation of privacy in the contents of their pipe.  Accordingly, the Defendants' act of kicking the pipe from the Plaintiffs' residence to see the contents of the pipe constituted a search under the Fourth Amendment.

After determining that Dollar and Loyless's actions constituted a search, the court turns to the Defendants' exigency argument.  To reiterate, courts have found that the prevention of evidence destruction is an appropriate exigency situation to invoke this exception to the warrant requirement.  *See McClish*, 483 F.3d at 1240-41.  However, in order to properly search a home and its curtilage, "[t]he government ... [must] demonstrat[e] the existence of both probable cause and exigency." *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir.2002).  While the

---

[3] The Plaintiffs' waste water's final resting place has not been alleged and this court will not guess as to where it will go.

officers may have reasonably believed that the running water was for the destruction of evidence, it is the character of the evidence that is called into question.  Dollar and Loyless were at the Plaintiffs' residence to make an arrest for rape.  Drugs were not implicated in any way by the arrest warrant, nor was there reason to believe that there was any evidence present at the Plaintiffs' residence.[4]  So while the officers may have believed that there was an exigency, the probable cause portion of the inquiry is lacking.

The Defendants offer a plethora of cases to support its contention that  Dollar and Loyless are entitled to the exigency exception to the search warrant requirement.  However, these cases are all non-binding on this court and all relate to situations in which the exigency was coupled with an active drug investigation or some other investigation with destroyable evidence.  *See Golden v. State*, 361 So. 2d 1128, 1132 (Ala. Crim. App. 1978) (drug investigation); *United States v. Fiashe*, 520 F.3d 694, 698 (7th Cir. 2008) (drug investigation); *United States v. Halliman* 923 F.2d 873, 878-80 (drug investigation); *United States v. Gomez*, 633 F.2d 999, 1008 (2nd Cir. 1980) (drug investigation); *see also United States v. Delguyd*, 542 F.2d 346, 351-52 (6th Cir. 1976) (loan sharking).  In each of these cases, the officers had probable cause to believe that evidence of drug and loan sharking crimes were present in the residence.  The probable cause coupled with exigent circumstances are both required for this exception to apply.  The Defendants were present at the Plaintiffs' residence to arrest a third party not living at that residence.  Unless the Defendants had probable cause to believe that something was going through the sewer that somehow related to arresting the third party individual, then the exigency

---

[4] This is especially true since the officers did not obtain a search warrant for the Plaintiffs' residence to accompany their arrest warrant.

exception cannot apply.  Since nothing alleged in the Plaintiffs' Complaint demonstrates such knowledge by Dollar and Loyless, this court rejects the Defendants' contention at this point.

b. <u>The Constitutional Right was Clearly Established</u>

Because the Defendants have violated a constitutional right of the Plaintiffs, the court must now determine if that right was clearly established at the time the right was violated.  *Wood v. Kesler*  323 F.3d 872, 878 (11th Cir. 2003).  This court finds that, under the alleged facts, the Defendants have violated a clearly established right of the Plaintiffs.

Concerning the warrantless search of the Plaintiff's residence, the court finds that this right has been clearly established.  More specifically, "law enforcement officers may not enter the home of a third party to search for the subject of an arrest warrant without first securing a search warrant for that home." *Bates v. Harvey*, 518 F.3d 1233, 1245 (11th Cir. 2008). Therefore, on the face of the facts, the Defendants entered the Plaintiffs' residence with an arrest warrant for a non-resident, and such an act violates a clearly established right of the Plaintiffs.

The Defendants, however, argue that their actions do not constitute a search.  It is abundantly clear that in order to constitute a Fourth Amendment search, the owner of the thing to be searched must have both a subjective expectation of privacy and an objective expectation of privacy.  *See United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006). Regarding the subjective portion, it is clear that individuals who hide items in opaque containers and store those items in private receptacles demonstrate the subjective portion of the expectation inquiry.  Furthermore, as discussed above, the Supreme Court has made it clear that those items that are put on public display or given public access do not meet the objective portion of the inquiry.  *See California v. Greenwood*, 486 U.S. 35, 40-41 (1988).  Therefore, the Defendants

15

were put on "fair notice" that those items which are hidden from public view and flowing to

private holding tanks are subject to privacy that the public finds reasonable. *Greenwood*, 486

U.S. at 40-41 (1988); *United States v. Hajduk*, 396 F. Supp. 2d 1216, 1224-26 (D.Colo. 2005)

(specifically finding an expectation of privacy in waste water flowing to a temporary holding

tank).

       Lastly, the Defendants argue that the exigent circumstances warrant exception applies to

this otherwise warrantless search.  However, the exigent circumstances warrant exception does

not do away with the probable cause requirement.  *See Holloway*, 290 F.3d 1331, 1337 (11th

Cir.2002).  Moreover, the cases that the Defendant cites in support of his contention that their

behavior does not constitute a clearly established right actually demonstrate that their behavior

was in fact in violation of a clearly established right.  Each case the Defendants cite

demonstrates that the police had probable cause to believe drug activity or loan sharking activity

was taking place before the police initiated an exigent circumstances search.  Those cases all

underscore the notion that probable cause must be present along with exigent circumstances.

Under the facts as alleged, the Defendants knew that they were at a location to effect an arrest

warrant and had no reason to suspect the Plaintiffs of being involved with drugs in any way.

Accordingly, the court finds that the right to be protected from searches that lack probable cause

was clearly established at the time of the Defendants' actions.

       Therefore, as to the actions alleged as to Count III, Illegal Entry, the court finds that the

Defendants violated the Plaintiffs's constitutional right, that the right was clearly established at

the time of the violation, and that the Defendants are not entitled to qualified immunity as to that claim at this stage in the litigation.[5]

### 2. Count II – Unlawful Search and Seizure

As with the Unlawful Entry analysis above, the court must determine whether the Defendants violated a constitutional right by the facts alleged by the Plaintiffs and whether that right was clearly established. The crux of the Defendants' argument concerning the Plaintiffs' Unlawful Search and Seizure claim relies on the presence of exigent circumstances. For the same reasons described in the previous section, the Defendants' contention fails.

The Defendants also assert that the Plaintiffs merely alleged broad legal conclusions amounting to a bare assertion that the Defendants lacked probable cause. In support for this contention, the Defendants cite a string of non-binding cases that all restate the *Iqbal* and *Twombly* standards that this court explained in section "II" above. The cases emphasize the need for the Plaintiffs' Complaint to have enough facts to demonstrate the Defendant's lack of probable cause to make a lawful search. *See, e.g., Ghaster v. City of Rocky River*, No. 1:09CV02080, 2010 WL 2802682 at *6 (N.D. Ohio July 13, 2010). As discussed above, the Plaintiffs allege that the Defendants had a warrant for a third party, that the warrant had a different address than the Plaintiffs' address, that the Defendants removed the Plaintiffs' pipe to see the contents even though the warrant concerned a charge of rape and not drugs, and that the warrant was for an arrest and not a search. The Plaintiffs maintain, and the court agrees, that the combination of those facts demonstrates that the Defendants lacked probable cause. Therefore,

---

[5] This does not mean that the Defendants are precluded from raising their qualified immunity defense again at the summary judgment phase or the trial phase.

17

the Defendants' search of the Plaintiffs' residence on these facts constituted a violation of a constitutional right.

The court discussed above that the Plaintiff's right to have their home protected from a search that lacks probable cause is clearly established.  Therefore, the court will not repeat that analysis again here.  Accordingly, the Defendants' qualified immunity defense as to this Count is denied at this point in the litigation.

### 3. Count VII – False Arrest and False Imprisonment

#### a. Abandonment of False Imprisonment Claims

The Plaintiffs' Complaint raises both False Arrest and False Imprisonment Claims against these Defendants, on behalf of Shorter and McMillan.  The Defendants argue that the Plaintiffs did not allege any facts that would support a False Imprisonment Claim for either Plaintiff, and, the Plaintiffs' False Imprisonment Claims are due to be dismissed.  In the Plaintiffs' Response to the Defendants' Motion to Dismiss, the Plaintiffs do not argue that the claim should continue or in any other way mention the False Imprisonment Claims.  By failing to raise and argue these claims in their response brief, the Plaintiffs' False Imprisonment Claims are due to be dismissed.  *Cf. Drakeford v. Alabama Co-op. Extension System*, 416 F. Supp. 2d 1286, 1313 (M.D. Ala. 2006) (citing *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir.1994)).

#### b. Waiver of McMillan's False Arrest Claim

The Plaintiffs concede and the Defendants agree that Plaintiff McMillan's Fourth Amendment False Arrest Claim is due to be dismissed because of McMillan's guilty plea to the charge of First Degree Possession of Marijuana.

<u>c. Shorter's False Arrest Claim</u>

The Defendants also argue that Shorter's False Arrest Claim is due to be dismissed because of their qualified immunity.  The Court agrees.

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (citing *Case v. Eslinger*, 555 F.3d 1317, 1326–27 (11th Cir. 2009); *Kingsland v. City of Miami*, 382 F.3d 1220, 1226, 1232 (11th Cir. 2004); *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996)).  "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown*, 608 F.3d at 734 (citing *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997)).  Furthermore, an officer need only have arguable probable cause to receive qualified immunity, and arguable probable cause requires only that "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Id.* (quoting *Kingsland*, 382 F.3d at 1232).

In *Wren v. Towe*, the Fifth Circuit was faced with a situation in which a § 1983 plaintiff was seeking to employ the exclusionary rule to demonstrate the defendant law enforcement officer's lack of probable cause in order to defeat qualified immunity. 130 F.3d 1154 (5th Cir. 1997).  The Fifth Circuit explained that "[t]he rationale behind the exclusionary rule is 'to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved,' and application of the rule is 'restricted to those areas

19

where its remedial objectives are thought to be most efficaciously served.' *Wren*, 130 F.3d at 1158 (quoting *United States v. Janis*, 428 U.S. 433, 446-447 (1976)).  Accordingly, the court found that there was no reason to ignore or exclude the illegally obtained evidence.

The court finds the *Wren* court's logic to be persuasive.  While this court has concluded, as set out above, that the facts alleged by the Plaintiffs do amount to an illegal entry into the Plaintiffs' residence and an illegal search of the Plaintiffs' residence, the court finds that the marijuana that fell from the pipe was enough to give the Defendants probable cause to believe that a criminal offense was taking place.  This probable cause does not in any way validate the aforementioned improper search or illegal entry.  It merely means that armed with their illegally obtained evidence, the Defendants had arguable probable cause to arrest the Plaintiffs.  Outside of the criminal context, where the "exclusionary rule" would apply, such reliance is proper. *Wren*, 130 F.3d at 1158.  This fact does not serve to remedy the failure to obtain a warrant before proceeding against the Plaintiffs, but is only relevant to the legality of the arrest.

To reiterate, "the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).  Accordingly, Shorter's claim of False Arrest also is due to be dismissed.

#### 4. Count I – Excessive Force Claim

The Defendants argue that the Plaintiffs excessive force claim is due to be dismissed under a theory of qualified immunity.  The Plaintiffs contest the Defendant's qualified immunity theory.

"Under this Circuit's law ... a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Bashir*

20

*v. Rockdale County, Georgia*, 445 F. 3d 1323, 1331-32 (11th Cir. 2006) (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir.2000)).  "[I]f an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest." *Bashir*, 445 F. 3d at 1332. "[W]here an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim." *Id.* (citing *Jackson*,  206 F.3d at 1171).  The Plaintiffs do allege facts about the Defendants excessive force in their Complaint, but the actual claim of Excessive Force in their Complaint rests entirely on the fact that the Defendants lacked probable cause to make an arrest.  They argue, correctly, that if the Defendants made an illegal arrest, then the force is excessive; however, Eleventh Circuit precedent takes that claim and folds it into the False Arrest Claim.  Accordingly, the Plaintiffs' Excessive Force Claim as pled is dismissed without prejudice.

5. <u>Abandonment of the Plaintiffs' Count V – Failure-to-Intervene Claims</u>

As with the False Imprisonment Claims above, the Plaintiffs failed to argue or mention the Failure-to-Intervene Claim at all in their Response to the Defendants' Motion to Dismiss. Likewise, those claims are due to be dismissed.  *Cf. Drakeford v. Alabama Co-op. Extension System*, 416 F. Supp. 2d 1286, 1313 (M.D. Ala. 2006) (citing *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir.1994)).

## V.  **CONCLUSION**

At this stage in the litigation, the Defendants Motion to Dismiss is due to be granted only in part; however, this determination will not prejudice the Defendants from seeking to raise

21

qualified immunity at the summary judgment stage if they so choose.  Accordingly, it is hereby

ORDERED

     1.  The Motion to Dismiss of Defendants Dollar and Loyless is GRANTED to the following extent:

          a. Counts I, II, III, V, and VII are dismissed with prejudice as to Dollar and Loyless in their official capacity.

          b. Count I is dismissed without prejudice as to Dollar and Loyless in their individual capacity, with leave to amend, if appropriate.

          c. Count V is dismissed with prejudice as to Dollar and Loyless in their individual capacity.

          d. Count VII is dismissed with prejudice as to Dollar and Loyless in their individual capacity.

     2. The Defendants' Motion to Dismiss is DENIED in all other respects.

     3. The case will proceed at this time on Count II and Count III against Dollar and Loyless in their individual Capacity.


 Done this 7th day of November, 2011.


                    /s/ W. Harold Albritton
                    W. HAROLD ALBRITTON
                    SENIOR UNITED STATES DISTRICT JUDGE