IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| EDDRICK SHORTER, ) | |
| LATOYA MCMILLAN, ) | |
| A.M., a minor who sues by and through ) | |
| her mother and next friend Latoya ) | |
| McMillan, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:11cv531-WHA |
| ) | (WO) |
| KIRBY DOLLAR, in his individual ) | |
| and official capacities, ) | |
| MIKE LOYLESS, in his individual ) | |
| and official capacities, ) | |
| RACHEL HOUSER, in her individual ) | |
| and official capacities, ) | |
| CITY OF PHENIX CITY, ) | |
| RAY SMITH, in his individual ) | |
| and official capacities, ) | |
| DANIEL DAVIS, in his individual ) | |
| and official capacities, ) | |
| JARRED BARR, in his individual ) | |
| and official capacities, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. # 50) filed December 19, 2011, a Motion to Stay Discovery (Doc. #52) filed December 19, 2011, and a Motion for Reconsideration (Doc. #62) filed on January 24, 2012, by Defendants Kirby Dollar ("Dollar") and Mike Loyless ("Loyless"). Also before the court is a Motion for Leave to File

First Amended Complaint (Doc. #57) filed on January 14, 2012, by the Plaintiffs, Eddrick Shorter ("Shorter"), Latoya McMillan ("McMillan"), and A.M. (collectively "the Plaintiffs").

The Plaintiffs filed a Complaint in this court on July 1, 2011, alleging claims against multiple defendants including Dollar and Loyless.  On November 7, 2011, this court ordered that all but two of the Plaintiffs' claims were barred due to the Defendants' qualified immunity.  The two remaining claims are Count II – unlawful search and seizure in violation of the Fourth Amendment of the U.S. Constitution and brought pursuant to 42 U.S.C. § 1983 and Count III – illegal entry  in violation of the Fourth Amendment of the U.S. Constitution and brought pursuant to 42 U.S.C. § 1983.  Both claims are against each Defendant in his individual, rather than official, capacity.

For reasons to be discussed, the Motion for Summary Judgment is due to be DENIED.  The Motion for Reconsideration and the Motion to Stay Discovery are DENIED as moot[1], and the Motion to for Leave to File First Amended Complaint is due to be GRANTED.

## II. STANDARDS

### A. Summary Judgment Standard

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes

---

[1] Because the Motion for Reconsideration and the Motion to Stay Discovery are moot, this opinion will not outline a standard for these types of motions nor will it contain any other discussion concerning these motions.

demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

B. <u>Motion for Leave to Amend Complaint Standard</u>

"The decision whether to grant leave to amend a complaint is within the sole discretion of the district court." *Laurie v. Alabama Court of Criminal Appeals*, 256 F.3d 1266, 1274 (11th

Cir. 2001).  However, "Fed.R.Civ.P. 15(a) provides that 'leave shall be freely given when justice so requires.'" *Nat'l Independent Theatre Exhibitors, Inc. v. Charter Financial Group, Inc.*, 747 F.2d 1396, 1404 (11th Cir. 1984).  If a motion to amend is filed after the deadline set forth in a Rule 16 scheduling order, then the court considers Rule 16's "good cause" standard before considering Rule 15's "freely given when justice is required standard."  *See Sosa v. Airport Systems, Inc.*, 133 F.3d 1417, 1419 ("because Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)").  Because the Plaintiffs' motion was filed well before the May 1, 2012 deadline, this court will determine the motion based on the liberal Rule 15 standard instead of the stricter Rule 16 standard.

In order to successfully oppose a motion for leave to amend, the opposing party must provide a substantial reason to the court.  *Laurie*, 256 F.3d at 1274.  Such reasons include "undue delay, bad faith, dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* quoting (*Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### III.  FACTS

The following facts are taken entirely from this court's November 7, 2011 opinion's ("Prior Opinion") statement of the facts alleged in the Complaint except where noted.  *Shorter v. Dollar*, No. 3:11cv531–WHA, 2011 WL 5358652, at *2-*3 (M.D. Ala. November 7, 2011). Furthermore, only the facts relevant to the unlawful search and seizure claim and the unlawful entry claim are provided as follows, accepting, at this stage, the Plaintiffs' evidence as true and drawing all justifiable inferences in favor of the Plaintiffs:

4

On or around October 30, 2009, the Plaintiffs were in their residence located at 1109 20th Street in Phenix City, Alabama.  At around 1:45 p.m., the Plaintiffs were startled by someone who was knocking so violently on the door that "burst[s] of light" escaped between the door and its frame with each knock. (Doc. #1 ¶ 17).  The door was connected to the living room, so only Shorter and A.M. heard the knocking since McMillan was in the bathroom taking a shower.  Furthermore, the individual officer knocking proceeded in using vulgar language in commanding that the Plaintiffs open the door.  Shorter opened the door long enough to tell the officer to stop beating on the door since A.M., age 3, was present and growing fearful.  The shouting and banging continued until officers exploded into the apartment by breaking down the door and spreading out throughout the home.

Loyless and Dollar were two of the officers who entered the Plaintiffs' residence during that explosive entry.  Each of the officers had their guns drawn and pointed at Shorter.  Defendant Jarred Barr ("Barr"), a police officer with whom Loyless and Dollar were working, placed his gun within inches of Shorter's face and restrained Shorter's hands.  After Shorter complied with Barr's requests, Dollar struck Shorter in the back of his head with his gun causing Shorter to collapse to the ground and lose consciousness.  While Shorter was on the ground and restrained in handcuffs, Dollar, Loyless, Barr, and Defendant Rachel Houser ("Houser") all began beating Shorter with their batons on the back of his legs.  These beatings left bruises, lacerations, and contusions on Shorter.  Soon after the beating, the officers took McMillan and Shorter to separate officers' cruisers.

In addition, the Plaintiffs' Complaint also asserts that the Defendants did not have a search warrant for the Plaintiff's residence, but, instead, had an arrest warrant naming Navansley

5

"Tat" Smith, at the address 47 Springvalley Road in Russell County, for 1st Degree Rape. To support their claim, the Plaintiffs cited language from Dollar's affidavit in support of the default judgment from a state forfeiture matter related to the Plaintiffs' state criminal trials. (Doc. #1 ¶ 43). Plaintiff also further notes that Dollar's affidavit contained the wrong date (October 10 instead of the proper October 30). (Doc. #1 ¶ 45).

The Plaintiffs allege that the Defendants swarmed the outside of the house before Officer Barr began banging on the front door. Although not alleged in the Complaint, the Plaintiffs have provided pictures and affidavits by Shorter and McMillan which show that the Plaintiffs' home, including the drain pipe, was enclosed inside a chain link fence on the day of the incident. Therefore, in order to swarm the house, the officers would have necessarily gone onto the Plaintiffs' fenced in property.[2] The Plaintiffs allege that the Defendants, without lawful reason to do so, separated an exterior sanitary sewage drain pipe from the Plaintiffs' residence after they had circled the Plaintiff's home. The Defendants discovered a small amount of marijuana inside the drain pipe.

The final destination of the waste water carried by the drain pipe has created some controversy in this case. The Complaint did not allege whether the waste water drained into the public sewer or if it drained into a private septic tank on the Plaintiffs' property. The Plaintiffs argued in their response brief to the Defendants' Motion to Dismiss that the pipe led to a septic tank. Subsequently, the Defendants discovered, and the Plaintiffs do not contest, that the waste water actually drains into the public sewer.[3]

---

[2] This fact was not considered in the Prior Order.

[3] This fact was not considered in the Prior Order

After arresting the Plaintiffs, the Defendants searched the entire home, without a search warrant, and collected items of personal property including $600 cash and a handgun. Even though the Defendants arrived at the Plaintiffs' residence at 1:45 p.m., the search warrant was not issued until about 3:45 pm, which was after the entry to the residence, the arrests of Shorter and McMillan, the search of the residence, and the seizure of property.

Furthermore, the search warrant contains information in conflict with Dollar's aforementioned affidavit. For example, Dollar's Return and Inventory form attached to the search warrant, explains that the persons and places to be searched took place at 4:00 p.m. on October 30, 2009 at 1109 20th Street, Phenix City, AL. (Doc. #1 ¶ 54). This is inconsistent with his affidavit which provides that the arrest warrant was executed on October 10, 2009 at 47 Springvalley Road in Russell County. (Doc. #1 ¶ 43).

The Plaintiffs maintain that at no point in time were they suspects for any criminal investigation, (Doc. #1 ¶ 71), and that at all times Dollar and Loyless were acting "within the line and scope of their authority as officers of the Sheriff of Russell County." (Doc. #1 ¶ 58).

## IV.  DISCUSSION

The Defendants, utilizing language from this court's Prior Opinion, argue that summary judgment should be granted in their favor because of the recently discovered fact that the Plaintiffs' waste water flows directly into the sewer. *Shorter*, 2011 WL 5358652 at *6 ("it is clear that individuals have no expectation of privacy in material that is moving irretrievably into the public."). Based on how this court ruled in that Prior Opinion, the Defendants argue that qualified immunity should apply given the particular factual circumstances. The Plaintiffs argue,

7

however, that summary judgment should be denied because of another fact that was not considered during the Motion to Dismiss stage. The Plaintiffs argue that the Defendants' conduct considered in light of the fence encircling the Plaintiffs' lawn and the proximity of the drain pipe to the residence, facts that the Defendants have not addressed, amounts to a violation of a clearly established constitutional right. Accordingly, the Plaintiffs argue that the facts demonstrate an illegal search of the curtilage and drain pipe in addition to the illegal search of and entry into the Plaintiffs' home sufficient to defeat a motion for summary judgment.

This court will begin by briefly explaining qualified immunity. This court will then address Count II, the implications of the waste water flowing into the public sewer, and Count III before turning to the Motion for Leave to File First Amended Complaint.

## A. <u>Qualified Immunity</u>[4]

Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991). As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988). Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then

---

[4] This section is largely copied from the Prior Opinion. *Shorter* 2011 WL 5358652 at *3-*4.

determine "whether the right was clearly established." *Wood v. Kesler* 323 F.3d 872, 878 (11th Cir. 2003).

Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997). In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In *Vinyard v. Wilson*, 311 F.3d 1340, 1350–53 (11th Cir. 2002), the Eleventh Circuit articulated three ways in which individual state defendants can receive "fair notice" that their conduct violates clearly established law. First, the words of a federal statute or constitutional provision may be specific enough "to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, <u>even in the total absence of case law</u>." *Id*. at 1350 (emphasis in original). The Eleventh Circuit considers a case falling into this category an "obvious clarity case." *Id.* at 1350.

Second, if the conduct at issue is not so egregious as to violate the Constitution or a federal statue on its face, the court must turn its attention to case law that espouses "broad statements of principle . . . that are not tied to particularized facts." *Id.* at 1351. In these types of cases, courts will declare "X Conduct" unconstitutional regardless of the specific factual situation. *Id.* "[P]ut differently, the precise facts surrounding 'X Conduct' are immaterial to the violation," thus these decisions can "clearly establish law applicable in the future to different sets of detailed facts." *Id.*

9

Third, courts must look to cases that tie a particular type of conduct to the specific facts of the case. *Id.* With these cases, courts must examine case law stating that "Y Conduct" is unconstitutional in "Z circumstances."[5] *Id.* If the circumstances facing the official are "materially similar" to those of the fact-specific case, this precedent can clearly establish the applicable law and qualified immunity will not be warranted. *Id.* at 1352.

In this circuit, the law can be "clearly established" for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or when relevant the highest court of the state where the case arose. *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003).

Because the issue of whether the Defendants were acting within their discretionary authority is uncontested, this court will limit its analysis as to qualified immunity for Counts II and III only to whether the Defendants' conduct violated a constitutional right and whether that right was clearly established.

B.  Count II – Illegal Search and Seizure

It is well-settled law in this circuit that "the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant." *Steagald v. U.S.*, 451 U.S. 204, 211-12 (1981) (citing *Payton v. New York*, 445 U.S. 573(1980)). "It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Griffin v. Wisconsin*, 483 U.S. 868, 884 (1987) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 748-49 (1984)) (internal quotation marks excluded). "At

---

[5] The Eleventh Circuit noted that most case law will fall into this third category. *Vinyard*, 311 F.3d 1351–52.

common law, the curtilage is the area which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life, . . . and therefore has been considered part of the home itself for Fourth Amendment purposes.'" *United States v. Taylor*, 458 F.3d 1201, 1206 (11th Cir. 2006) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)) (some internal punctuation omitted).

While "the special protection accorded by the Fourth Amendment [applies] to the people in their 'person, houses, papers and effects,' [it] is not extended to the open fields." *U.S. v. Hatch*, 931 F.2d 1478, 1480 (11th Cir. 1991) (quoting *Oliver*, 466 U.S. at 176). Moreover, individuals "may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Hatch*, 931 F.2d at 1480 (quoting *Oliver*, 466 U.S. at 178). In other words, it is clearly established that "Fourth Amendment protection extends to the curtilage of the house." *Id.* (citing *United States v. Dunn*, 480 U.S. 294, 300 (1987)).

In the Eleventh Circuit, the determination of what area around a home constitutes curtilage is a question of fact. *United States v. Berrong*, 712 F.2d 1370, 1374 (11th Cir. 1983). However, the courts have explained that the extent to which Fourth Amendment protections apply to areas around a home "turns on 'whether an individual reasonably may expect that the area in question should be treated as the home itself.'" *Hatch*, 931 F.2d at 1480 (quoting *Dunn*, 480 U.S. at 300). The *Dunn* Court provided four factors for courts to consider in its curtilage determinations: (1)"the proximity of the area claimed to be curtilage to the home," (2) "whether the area is included within an enclosure surrounding the home," (3) "the nature of the uses to which the area is put, and" (4) "the steps taken by the resident to protect the area from

observation by people passing by." *Dunn*, 480 U.S. at 301.  This court will now address each factor in turn.

The first factor, proximity of the area to the home, weighs strongly in the Plaintiffs' favor.  It would be almost impossible to have a set of facts in which the area at issue is closer to the home.  In this case, the pipe is connected to the home and extends into the ground leaving only a small portion of the pipe visible.  The precedent in this area establishes that "[n]either the Supreme Court nor the Eleventh Circuit has defined, in numerical distance terms, the phrase 'close proximity.'" *United States v. Garrott*, 745 F. Supp. 2d 1206, 1209 (M.D. Ala. 2010)[6] (citing *United States v. Depew*, 8 F.3d 1424, 1427 (9th Cir. 1993)).  The cases cited by the Plaintiffs demonstrate that locations on a piece of property that are separated from the home by a fence, other structures, or by some considerable distance are not likely to be considered "close proximity" to the home.  *See Dunn*, 480 U.S. at 296 (holding that an area near a barn located fifty yards from a fence encircling a ranch home was beyond the curtilage); *Hatch*, 931 F.2d at 1479-80 (holding that the marijuana seized was beyond the curtilage because it was separated from the home by a fence and other structures and was more than thirty yards from the home); *Taylor*, 458 F.3d at 1207 (holding that a pond was not part of the curtilage of a home because it was sixty yards from the home and there were other structures between it and the home).

The Plaintiffs explain that the *Garrott* case is most analogous in that the court found that marijuana growing in a small backyard which was encircled by a partially completed fence and

---

[6] It is noteworthy that this case was decided before the date of the incident giving rise to this suit.  Therefore, this court has not included it in its discussion of "clearly established" law for qualified immunity purposes, but the case does serve to emphasize the general rule that there is no hard and fast rule as to what constitutes "close proximity."

located merely twenty-five yards from the home was within the curtilage.  *Garrot*, 745 F. Supp. 2d at 1201.  However, this case was decided after the incident and would not have been able to serve as notice to the Defendants in this case.  Even in the absence of *Garrott*, this court finds that a drain pipe connected to a house is obviously in close proximity to that house.

The second factor, whether the area is included within an enclosure, also weighs heavily in the Plaintiffs' favor.  This factor is not to be confused with the fourth factor which concerns a resident's steps taken to keep an area hidden from public view.  The significance of this factor is not the actual privacy that the fence provides but whether the Plaintiffs were reasonable to expect privacy in that area of their yard.  The pictures provided by the Plaintiffs demonstrate that the backyard, where the pipe was located, was separated from surrounding areas with a chain link fence.  Moreover, nothing from the pictures suggests that the area encircled by the fence is unreasonably large so as to render the Plaintiffs' expectation of privacy unreasonable.

The third factor, which concerns how the area is put to use, weighs in favor of the Plaintiffs.  From the pictures provided, the area of the Plaintiffs' yard which is at issue is quite small.  The yard is not overgrown at the spot but there is nothing else there which demonstrates any particular use of that area.  Given the fact that the fenced-in yard is small and that the yard does not appear overgrown, this court has no reason to find that the area of the yard in question is not for the intimate use associated with a home.

The fourth factor, steps taken by the Plaintiffs to prevent public observation, weighs in favor of the Plaintiffs, but not by as large a margin as the other factors.  The Supreme Court has explained that "[a]s a general proposition, the police may see what may be seen 'from a public vantage point where [they have] a right to be,'" *Florida v. Riley*, 488 U.S. 445, 449 (1989)

(quoting *California v. Ciraolo*, 476 U.S. 207, 213 (1986)) (brackets in original).  It is obvious then that a chain link fence does not prevent someone who passes by from seeing what is contained within the fence, and the Court has explained that "'[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.'" *Riley*, 488 U.S. at 449 (quoting *Ciraolo*, 476 U.S. at 213).  Therefore, the Defendants would have been allowed to inspect the pipe from a "public vantage point" without a warrant.  However, physically manipulating the pipe is manifestly different than viewing the pipe from a public vantage point.  Moreover, it is reasonable for an individual to expect more privacy in his backyard than in the front yard.  The Plaintiffs point to their submitted photos to explain that the pipe was located in the Plaintiffs' backyard, and argue that this helps factor four to cut in their favor.  The court agrees.

This court does note that while a warrantless search of a home or its curtilage is unconstitutional, there are "a few 'jealously and carefully drawn' exceptions." *McClish v. Nugent*, 483 F.3d 1231, 1240 (11th Cir. 2007) (quoting *Georgia v. Randolph*, 547 U.S. 103, 109 (2006)).  "Consent provides one exception to the warrant requirement." *McClish*, 483 F.3d at 1240 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *United States v. Edmondson*, 791 F.2d 1512, 1515 (11th Cir.1986)).  "A second exception to the warrant requirement is made for 'exigent circumstances,' or situations in which 'the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action.'" *Id.* (quoting *United States v. Burgos*, 720 F.2d 1520, 1526 (11th Cir.1983)). "Courts have upheld exigent circumstances entries to break up a violent fight, to prevent the destruction of evidence, to put out a fire in a

burning building, to pursue a fleeing suspect, to rescue a kidnaped infant, and to attend to a stabbing victim." *Id.* at 1240-41 (internal citations omitted).

As explained in great length in this court's Prior Opinion, it is clear, from the facts alleged in the Complaint, that there was no exigent circumstance present to justify the Defendants' warrantless search of the Plaintiffs' curtilage and pipe. *Shorter*, 2011 WL 5358652 at *7. The only new fact that the Defendants have cited is that the drain pipe fed into the public sewer. This new fact is not a panacea for all of the issues raised by the Complaint as to the Defendants' conduct. For instance, as this court has already explained, in the cases where the exigency exception was allowed, the officers had probable cause to believe that destroyable evidence was at a particular location and was likely to be destroyed before a warrant could be secured. *Id.* The addition of the fact that the waste water goes to a public sewer does not create probable cause to believe drugs are in a home. Accordingly, the exigency exception is inapplicable just as it was at the Motion to Dismiss stage.

This court has found that the Plaintiffs have a clearly established right to be free from warrantless searches of their home and curtilage in the absence of either exigency or consent. Accordingly, because neither exception to the warrant requirement is applicable, the Plaintiffs only need to provide sufficient evidence to establish that the drain pipe was part of the curtilage in order to defeat summary judgment. Construing the facts of this case in a light most favorable to the non-movant, as this court must do on a motion for summary judgment, and given both the absence of any warrant exception and the *Dunn* factors weighing so heavily in favor of the Plaintiffs, this court finds that the Plaintiffs have "'present[ed] evidence from which a jury might return a verdict in [their] favor. [Having] do[ne] so, there is a genuine issue of fact . . . .'"

15

*Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988) (quoting *Livernois v. Medical Disposables, Inc.*, 837 F.2d 1018, 1022 (11th Cir. 1988)).

Having established a genuine issue of fact, the Plaintiffs have defeated the Defendants' Motion for Summary Judgment as to Count II – Unlawful Search and Seizure.

### C. Search of the Waste Water

The Defendants also argue that, pursuant to the Prior Opinion, because the evidence now shows that the Plaintiffs' waste water flows irretrievably into the public sewer system, as opposed to a private septic tank, the Defendants did not conduct a Fourth Amendment search by breaching the Plaintiffs' drain pipe. However, the Defendants' argument glosses over the newly discovered fact that the Defendants would have had to enter a gated backyard and the Plaintiffs' home's curtilage in order to conduct the search of the pipe. This changes the character of the analysis. This court's earlier determination did not consider whether the Defendants physically intruded onto the curtilage of the Plaintiffs' home in order to breach the drain pipe.

While it is true that this court found in its Prior Opinion that "it is clear that individuals have no expectation of privacy in material that is moving irretrievably into the public," *Shorter*, 2011 WL 5358652 at *6, that statement pertained to whether looking into the drain pipe constituted a search. At the time that opinion was rendered, there was no discussion as to whether the drain pipe was part of the curtilage of the home. Having found that the drain pipe is almost certainly part of the curtilage, this court's inquiry changes drastically. As explained above, it is axiomatic that a warrantless intrusion into a home by the government to perform a search is unreasonable under the Fourth Amendment, and that the curtilage of the home is treated

the same as the home under the Fourth Amendment. *See Griffin*, 483 U.S. at 884; *Hatch*, 931 F.2d at 1480.

Therefore, the critical inquiry is no longer whether searching a drain pipe constitutes a search under the Fourth Amendment, but rather whether a search of a home's curtilage constitutes a search. In the absence of an exception, the answer to the latter inquiry is unequivocally yes, and to search a home or its curtilage without a warrant is something that a reasonable officer would know to be incorrect.

### D. Count III – Illegal Entry

In this court's Prior Opinion, this court went into extensive detail about why the entry into the Plaintiffs' home violated their constitutional right, given the facts alleged by the Complaint. *Shorter*, 2011 WL 5358652 at \*4-\*9. Furthermore, the court explained that that constitutional right was clearly established. *Id.* The Defendants, in their Motion for Summary Judgment accepted all of the allegations from the Complaint as true for the purposes of their motion except for the fact that the waste water from the Plaintiffs' home flowed into the public sewer. The only fact that the Plaintiffs have presented in addition to the Complaint is that the drain pipe which was attached to the house was located in the Plaintiffs' fenced-in yard.

These new facts do not change the fact that "Defendants had a warrant for a third party, that the warrant had a different address than the Plaintiffs' address, that the Defendants removed the Plaintiffs' pipe to see the contents even though the warrant concerned a charge of rape and not drugs, and that the warrant was for an arrest and not a search." *Id.* at \*9. The same problems that doomed the Defendants' assertion of qualified immunity at the motion to dismiss stage similarly defeat their assertion of qualified immunity at the summary judgment stage. Quite

17

simply, this slightly expanded version of the facts contains all the same problems present at the motion to dismiss stage.  Moreover, given the possibility that the drain pipe in question could be found to be part of the curtilage by a trier of fact, the Plaintiffs may have established an alternate theory of liability for Count III.

To reiterate, "[a]t common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life, . . . and therefore has been considered part of the home itself for Fourth Amendment purposes.'" *Taylor*, 458 F.3d at 1206.  The Plaintiffs have put forth evidence that the drain pipe is part of the curtilage of their residence, and, as with Count II, this evidence creates an issue of material fact because a determination by a fact finder that the drain pipe is part of the curtilage would mean that any entry onto the drain pipe area would be tantamount to an entry into the home.  As explained above, the broad legal principles associated with the Fourth Amendment make it clear to any reasonable officer that a warrantless entry into the home or curtilage is unconstitutional.  Accordingly, this court finds that the Plaintiffs, under either the theory put forth during the motion to dismiss stage or to this new curtilage theory, have "'present[ed] evidence from which a jury might return a verdict in [their] favor. [Having] do[ne] so, there is a genuine issue of fact . . . .'" *Samples*, 846 F.2d at 1330.

Having established a genuine issue of fact, the Plaintiffs have defeated the Defendants' Motion for Summary Judgment as to Count III – Illegal Entry.

### E.  Motion for Leave to File First Amended Complaint

Rule 15 requires that this court "freely give leave [to amend pleadings] when justice so requires."  The Defendants have correctly stated that in order to oppose an amendment under

Rule 15 they would have to demonstrate "undue delay, bad faith, or dilatory motive" on the part of the Plaintiffs. *Laurie*, 256 F.3d at 1274. The crux of the Defendants' argument is that the Plaintiffs waited six weeks from this court's Prior Opinion before filing their Motion for Leave to File First Amended Complaint, and that the motion was filed both to include a fact that the Plaintiffs' had misrepresented to the court and to avoid an impending adverse summary judgment. The court does not find any of these reasons to be substantial.

As to the Defendants' bad faith argument, there is no reason to believe that the Plaintiffs were acting in bad faith when they alleged that their home's drain pipe deposited waste water in a septic tank, nor has any evidence been presented that the Plaintiffs acted in bad faith by claiming that the Defendants lacked probable cause to enter into their home.

As to the undue delay argument, the six week time frame is not so long as to prejudice the Defendants, especially in light of the fact that the Scheduling Order for this case (Doc. #48 at Section 4) sets out a May 1, 2012 deadline for the Plaintiffs to file amended pleadings. The Motion for Leave to File First Amended Complaint was filed on January 14, 2012, which is still more than three months before the May 1, 2012 deadline, so an argument of undue delay is unpersuasive given the present circumstances.

Lastly, as to the dilatory motive, this court does not agree with the Defendants' argument that the Plaintiffs' motion was filed simply to avoid an impending summary judgment. The Plaintiffs are not attempting to hide the fact that the waste water flows from their home to the public sewer and have included that in the new complaint. However, the fact that the house is surrounded by a fence is a key fact, and, as explained above, is crucial to this court's determination of the issues before it and to Plaintiffs' theory of liability.

After examining the Defendants' arguments, this court finds that justice is best served by granting the Plaintiffs' Motion for Leave to File Amended Complaint.

### E. Conclusion

In sum, this court finds that the Plaintiffs have created a genuine issue of material fact as to both Counts II and III, which means that the Defendants' Motion for Summary Judgment must be denied.  Moreover, this court grants the Plaintiffs' Motion for Leave to File First Amended Complaint because justice so requires.  Accordingly, having rejected the Defendants' arguments in support of its Motion for Summary Judgment, this court finds that the Defendants' Motion to Stay Discovery and Motion for Reconsideration are hereby denied as moot because both raise substantially identical arguments as the Motion for Summary Judgment.

## V. CONCLUSION

For the foregoing reasons, it is hereby ordered as follows:

1. Defendants' Motion for Summary Judgment (Doc. #50) is DENIED.

2. Plaintiffs' Motion for Leave to File First Amended Complaint (Doc. #57) is GRANTED.

3. Defendants' Motion to Stay Discovery (Doc. #52) and Motion for Reconsideration (Doc. #62) are both DENIED as MOOT.

4. The case will proceed at this time on Count II and Count III against Dollar and Loyless in their individual capacity as per the Scheduling Order (Doc. #48).

Done this 24th day of February, 2012.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE